SALZER v. IRSCH et al.

(Circuit Court, S. D. New York. June 13, 1893.)

1. EQUITY—JURISDICTION—CONTRACTS. .

Complainant, having secured patents for an invention which had not yet proved a commercial success, made an agreement on October 10th with defendant, whereby he was to continue his researches for perfecting the invention, and to assign to defendant a half interest in all patents and inventions, present and future. Defendant agreed to use his best efforts to introduce the invention to the public, and pay all expenses of exploiting the same. The profits as well as the expenses of future experiments and patents were to be equally divided. The exploitation was a failure, but certain third parties became interested in the matter, and an agreement was made to form a corporation, to which both plaintiff and defendant were to convey their interests. A certificate of incorporation was obtained, and plaintiff executed an assignment to defendant in order that the latter might convey the whole to the corporation; but a quarrel having arisen between defendant and the third parties as to the management of the corporation, in which complainant sided with them, the latter withdrew from the enterprise, defendant never executed the conveyance, and all communication between the parties ceased. The invention had not been perfected, and the first business of the corporation would have been to carry on further investigation and experiments. Defendant had committed no breach of his agreement with plaintiff of October 10th. *Held*, that although the parties had placed themselves in such a position that the invention was of no value to any one, and might be lost to the world, the court could only proceed upon the recognized lines of equity cognizance, and that the only relief which could be granted was a decree requiring defendant to deliver to plaintiff the assignment of the latter's half interest in the invention and patents.

2. SAME—CONTRACTS—BREACH.

The fact that defendant paid no part of the expenses of continued experiments did not put him in default, under the agreement of October 10th, it appearing that plaintiff never furnished him any statement thereof, and that the expenses had in fact been paid by the third persons pending the dispute.

In Equity. Bill by Henry Salzer against Francis Irsch and others. Decree for complainant.

Anthony Pollok, Philip Mauro, and William H. L. Lee, for complainant.

Marshall P. Stafford, for defendant Irsch.

COXE, District Judge. The complainant has for several years devoted his attention to the perfecting of a process for sterilizing and preserving meat. Prior to December 12, 1888, two letters patent of the United States, as well as some foreign patents, had been granted to him. His process was not, however, a commercial success. All of the samples after a certain time gave access to mold, and a certain percentage was spoiled outright. In this condition of affairs the complainant applied to the defendant Irsch as a competent person to introduce the patented process to the attention of the public. The negotiations between them culminated in a written agreement dated December 12, 1888, by the terms of which the complainant appointed Irsch his attorney to exploit the invention of the French and English patents by selling the pat-

ents, rights therein, or licenses thereunder. Salzer agreed to sign any instrument necessary to effectuate the object of the agreement, and Irsch promised to use his best endeavors to promote the common enterprise, and pay over complainant's share of the profits promptly. The parties were to share equally in the net profits after paying all necessary expenses, but Salzer was not responsible for money advanced by Irsch in unsuccessful efforts to exploit the invention. Under this agreement Irsch went to France, and made an effort to have the invention adopted by the French army and by others, but was unsuccessful because an examination instituted by the minister of war revealed the presence of numerous spots of mold on the meat.

On the 10th of October, 1889, a second agreement was made by which Salzer agreed to continue his researches and efforts to make the invention a commercial success, and to assign to Irsch a half interest in his inventions, present and future, and in his patents, American and foreign, then granted or thereafter to be granted. Irsch agreed to use his best efforts to introduce the inventions to the public, and to pay all expenses connected with exploiting the same. The profits, as well as the expenses of future experiments and procuring future patents, were to be divided equally. The parties, in October, 1889, were, then, joint owners of the patents and equal partners in the profits. Salzer was to devote his time and talents to perfecting the invention, and Irsch was to pay all the expenses attending its introduction to the public, and was to devote his time and talents to making the perfected invention popular. He was also to pay one-half of the expenses incident to Salzer's experiments. Shortly after the October agreement Irsch went to Chicago, and attempted to introduce the invention there, but without success.

The complainant continued his experiments, endeavoring to make the invention a commercial success, but nothing further of importance occurred until the spring of 1890, when, through the efforts of Irsch, Messrs. Wallerstein and Lewisohn were induced to interest themselves in the matter, and to advance $5,000 for the purpose of continuing the experiments and exploiting the invention. The negotiations between the parties ended in an agreement to form a corporation under the laws of New Jersey, and a certificate of incorporation was obtained and filed at Trenton, December 9, 1890. Both Irsch and Salzer were to convey to this company all their right, title, and interest in and to the Salzer patents. Salzer executed such an assignment, and delivered it to Irsch to be by him delivered to the company when organized, after being signed by him and recorded. This instrument Irsch still retains. The organization of the company was not completed owing to misunderstandings and quarrels between Irsch and Wallerstein and Lewisohn as to the management of the company and the expenditure of the money. In these disputes the complainant sided with Wallerstein and Lewisohn, and received from them direct about $1,800 for the purpose of continuing his experiments.

These disagreements ended December 4, 1891, by the withdrawal of Wallerstein and Lewisohn from the enterprise, and since then all communication between the parties has ceased.

These are the facts.

The one proposition which is established beyond dispute is that the parties have involved themselves in an apparently inextricable snarl. Neither can budge. The enterprise is at a standstill. Unless some change takes place in the present status of affairs the patents will be without value, and the inventions of Dr. Salzer, assuming that he has made a valuable discovery, will be lost to the world. What is to be done? It is suggested in complainant's brief that, even though the defendant has in all things kept his agreements, equity will find some way to protect the complainant's interests; but the principles of jurisprudence which are to be invoked in this somewhat novel undertaking have not been pointed out. It is entirely clear that whatever relief is granted must be on well-recognized lines of equitable cognizance. An entirely fair adjustment of the difficulty, based on a surrender by the defendant of his interest in the patents upon receiving his disbursements and a reasonable compensation for his services, was proposed at the argument, but was acquiesced in by neither party. It was the opinion of all that a decree proceeding upon the lines suggested was, under the present pleadings, out of the question. It must be remembered that this is not an action for specific performance, or for the dissolution of a partnership or a corporation, or to set aside a contract for fraud, or because of mutual mistake. Fraud is alleged, but there is no proof to sustain the allegation. Neither is it an action to compel the defendant to proceed with the formation of a corporation, and to transfer his interest in the patents to the corporation.

The relief demanded is: First: For an injunction restraining the defendant from disposing of the patents and the assignment of November 30, 1890. Second: For a decree annulling the agreements, written and oral, and compelling the defendant to deliver up the assignment of November 30, 1890. Third: For an accounting of all gains and profits which the complainant has lost through the conduct of the defendant.

It will be observed that the complainant's theory seems to be that the defendant has violated all of the agreements, and that the complainant, having kept them all, is entitled to have the agreements canceled without paying or offering to pay the defendant even the disbursements which he has incurred.

The following propositions are, it is thought, sufficiently established:

First. The agreement of December 12, 1888, was superseded by the agreement of October 10, 1889.

Second. By the terms of the October agreement Irsch was given a half interest in the inventions and patents of Salzer secured, or to be secured. The consideration for this transfer is clearly expressed in the agreement, and needs no explanation by extrinsic evidence.

Third. Irsch made endeavors to introduce the invention to the public and failed. The failure was not due to any fault of his. This proposition is conceded by the complainant himself. The invention was in a crude and tentative form. It has not even now, so far as the proof discloses, been perfected so as to become a commercial commodity. No one connected with the transaction thought that it was wise or proper for Irsch to continue his efforts to introduce to the public an invention for preserving meat, which, instead of doing so, permitted it to mold and putrify. It was recognized by all as late as the autumn of 1891 that the first business of the proposed corporation was to assist the inventor in perfecting his process. It is manifest, therefore, that no breach of the agreement can be imputed to Irsch in this regard.

Fourth. The only other obligation on the part of Irsch was to pay half of Salzer's expenses for experiments, patents, etc. He cannot be adjudged in default here for the reasons, first, that he was never furnished with any statement of these expenses, or asked to pay them; and, second, there were, in fact, no expenses for him to pay, they having been paid by Wallerstein and Lewisohn. In any view complainant is hardly in a condition to complain after having received from the gentlemen named nearly the sum of $2,000. The least the complainant could do, if he expected Irsch to participate in these expenses, was to send him a statement of their amount, and request him to remit one-half. The nearest approach to such a request is the letter of April 19, 1891, in which Salzer says: "Inclosed please find copy of application for new patent. If it should turn out unsuccessfully I shall defray expenses alone." The reason why Irsch was not asked to pay and did not pay the half of the expenses is apparent. After the proposed formation of the manufacturing company, and while the negotiations therefor were pending, both parties regarded the provisions of the contract of October, 1889, as suspended. They proceeded under the new agreement which all supposed would be consummated by the complete organization of the company. The understanding, so far as applicable to the present proposition, is stated by Mr. Wallerstein as follows:

"It was decided that Dr. Salzer should continue his experiments in Baltimore so as to put his invention into a practicable, merchantable article, that the necessary funds were to be paid to him against vouchers, and that he was to inform us of his progress and of expenses which he decided to make, and to obtain our consent thereto."

It is not at all strange, therefore, that the provisions of the October contract were regarded, by both parties, as being in abeyance.

Fifth. Although there were mutual complaints almost from the beginning, the relations between Salzer and Irsch continued friendly until the quarrel between Irsch and Wallerstein, and the espousal by Salzer of the cause of the latter. This was in the summer of 1891. Up to that time there was no pretense that Irsch had violated the October agreement, or lost any of his rights.

Sixth. The attempt to form a company was frustrated by dis-

putes, as to its management, between Irsch and Wallerstein. It is of no importance who was right and who was wrong in this controversy. It is conceded that the merits of that dispute are not involved in this action. It is a fact that the organization of the company was not perfected, that no property was ever vested in the company, and that its organization is now impossible. It being admitted by all that this company is defunct it leaves the rights of all parties as they were before the organization was attempted.

If the foregoing propositions are correctly stated, there can be little room for discussion as to the conclusion to be derived therefrom. Assuming that Irsch was wholly to blame for the failure to organize the corporation, it cannot be said that his conduct in this respect worked a forfeiture of the October agreement. He does not lose his interest in the patents because of the failure of a scheme to exploit the patents any more than Salzer would lose his interest if the failure to organize the company were wholly attributable to him. It seems clear, therefore, that the only relief to which the complainant is now entitled relates to the assignment of November 30, 1890. This was a conveyance by the complainant to the proposed corporation of his interest in the patents. It was intrusted to the defendant merely that he might attach his own signature and hand it to the corporation. He declined to do either. The corporation is no longer a possibility. The defendant has no shadow of right to this instrument. It belongs to the complainant and should be returned to him. Should the defendant fail to carry out the terms of the October agreement in the future, relief may be granted, but until this occurs that agreement cannot be disregarded. The defendant has vested rights which a court of equity must respect so long as the defendant himself respects them.

There must be a decree for the complainant directing the defendant to deliver up the November assignment, but without costs.